# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TOYA K. RADFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:11-cv-241-SEB-TAB |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

Toya K. Radford ("Radford") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq.*

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I. Background

Radford applied for SSI and DIB on March 26, 2008, alleging an onset date of June 30, 1998. His applications were denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted, and a hearing was conducted on August 2, 2010. Radford was present, accompanied by his attorney. Medical and other records were introduced into evidence. Radford and a vocational expert testified. The ALJ denied Radford's applications on September 23, 2010. On December 22, 2010, the Appeals Council denied Radford's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Radford met the insured status requirements of the Act through June 30, 1998; (2) Radford had not engaged in substantial gainful activity since June 30, 1998, the alleged onset date; (3) Radford had the following severe impairments: a gunshot wound with the bullet lodged in the body of the first lumbar vertebra and obesity; (4) Radford did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Radford had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); he could lift and/or carry or push or pull no more than 20 pounds occasionally or 10 pounds frequently; he could stand and/or walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday; and he was subject to postural limitations of no more than occasional balancing, stooping, crouching, crawling, kneeling, and climbing; (6) Radford had no past relevant work; (7) Radford was born on February 11, 1977, and was 21 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) Radford had a limited education and was able to communicate in English; (9) transferability of job skills is not an issue because Radford did not have past relevant work; and (10) considering Radford's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Radford had not been under a "disability," as defined in the Act, from June 30, 1998, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to make a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

In this case, the ALJ concluded that although Radford had severe impairments consisting of obesity and a gunshot wound with the bullet lodged in the body of his first lumbar vertebra, there were a significant number of light exertional jobs in the national economy that he could perform.

Radford argues that the ALJ's decision is not supported by substantial evidence. More specifically, he contends that the ALJ erred in failing to summon a medical advisor to testify whether Radford's impairments medically equaled Listing 1.04, the ALJ arbitrarily rejected evidence from treating and examining physicians, the ALJ's credibility determination was patently erroneous, and the ALJ's RFC assessment was not supported by substantial evidence.

As to Radford's first claim of error, he has the burden of showing that his impairments met or medically equaled a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). He must show that his impairments "satisfy all of the various criteria specified in the listing." *Id.* Listing 1.04 requires the following:

> 1.04 Disorders of the spine or the spinal cord.
> With: A. Evidence of nerve root compression

> characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or B. Spinal arachnoiditis, . . . or C. Lumbar spinal stenosis resulting in pseudoclaudication, ….

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.

Radford does not assert that his spinal impairment satisfied the criteria of any subpart of Listing 1.04. Rather, he contends that the ALJ erred by not obtaining an opinion from a medical expert on the issue of medical equivalence. While it is true that the determination of whether an impairment equals a listing is a medical judgment, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004), it is the ALJ's responsibility to decide medical equivalence. 20 C.F.R. 404.1526(e). Social Security regulations provide that opinions of medical consultants designated by the Commissioner may be considered in determining medical equivalence. *See* 20 C.F.R. 404.1526(c).

Radford relies on *Barnett* in support of his contention that the ALJ erred in failing to summon a medical expert. His reliance on *Barnett* is misplaced. The ALJ in *Barnett* did fail to consult a medical expert regarding listing equivalence. *Barnett,* 381 F.3d at 670-71. In addition, no Disability Determination and Transmittal forms were part of the record. *Id.* The *Barnett* ALJ also failed to identify by name the listing relevant to the plaintiff's condition, failed to consider critical evidence of medical equivalence, improperly disregarded a treating physicians' opinion that the plaintiff was disabled, and improperly rejected testimony as to the number of seizures the plaintiff experienced which, if credited, would have required the ALJ to find that her impairments satisfied a listing. *Id.* at 668-671.

Unlike the ALJ in *Barnett,* the ALJ in this case did not ignore any evidence of listing equivalence. Indeed, in this case, the state agency Disability Determination and Transmittal forms reflect that Radford did not even have a severe impairment. (R. at 69-73, 310-311). Radford has not pointed to evidence supporting any, much less all, of the criteria of Listing 1.04. The ALJ properly noted that the medical evidence did not satisfy the criteria of Listing 1.04 because "the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation." (R. at 15). Under these circumstances,

the ALJ's conclusion at step three that Radford's impairments did not meet or medically equal Listing 1.04 is supported by substantial evidence. *Id.*

As to the second claim of error, Radford asserts that the ALJ erred by arbitrarily rejecting evidence which proved that his combined impairments rendered him totally disabled. Radford recites various snippets of findings from the record which he alleges the ALJ ignored. For example, Radford states that the ALJ "ignored" findings that Radford had bilateral low back pain due to a gunshot wound and was only 66.5 inches tall but weighed 233 pounds. Radford's claim in this regard is baseless. The ALJ noted that Radford "suffers primarily from a gunshot wound that he suffered in July 1997, which left a bullet lodged in the anterior body of his first lumbar vertebra"… and "has weighed over 230 pounds at a height of approximately 66 inches." (R. at 16). The ALJ discussed the hospital reports from the 1997 gunshot wound and noted that Radford did not seek any further treatment for his back injury until 2008. (R. at at 17). The ALJ, in fact, accepted and accommodated Radford's symptoms to the extent that he determined that Radford "suffers from two severe physical impairments and therefore some limitations on standing, walking, and sitting are appropriate in addition to the exertional and postural limitations." *Id.* In addition, Radford has not shown any link between other allegedly ignored pieces of evidence ("vague density is noted of the left flank soft tissues suggesting the possibility of a left retroperitoneal hemorrhage," fracture to the L1 vertebrae, headaches after a motor vehicle accident in 2008, and early developing osteophytes at L2 and possibly L1) and his ability to perform work. Radford is reminded that "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (internal quotations omitted). The alleged omissions referenced by Radford do not render the ALJ's decision erroneous.

Radford next argues that the ALJ's credibility determination was patently erroneous. A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Radford objects to the ALJ's adverse credibility finding based on Radford having failed to report his income for federal tax purposes. Radford argues that not only was the tax filing issue irrelevant to his credibility for purposes of a disability determination, but the ALJ should have first determined that Radford was required to file a tax return before making such an adverse finding. Radford's position is not persuasive. An ALJ is entitled to view with skepticism the testimony of an applicant

whose behavior, such as failing to report income for tax purposes, undermines his credibility. *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). It was not improper for the ALJ to find Radford less than credible based on the fact that he had earned income during the years 1997 through 2005 doing odd jobs but never filed a tax return. *See* www.irs.gov (a self-employed individual must file taxes if he earns in excess of $400 net earnings).

"[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. ' 404.1529(c)(2)-(4) (internal quotation omitted)). In this case, the ALJ discussed the evidence that related to each of these factors. (R. at 16-19). After having reviewed and discussed the record, the ALJ concluded that Radford's allegations that he was incapable of performing all work activity were not credible "because of significant inconsistencies in the record as a whole." (R. at 17). The ALJ detailed several examples of Radford's inconsistent reports of his work history on his application for benefits, in his statements to physicians, and during his testimony. (R. at 18).

The ALJ also cited to a number of conflicting allegations concerning Radford's functional limitations, and the onset and severity of his pain. Although Radford alleges an onset date of 1998, he testified at the hearing that his back pain had worsened only in the last few years. (R. at 19, 58). The ALJ noted that in May of 2008, Radford reported to a consulting examining physician that he had been in constant, severe pain since he suffered the gunshot wound about 10 years earlier. (R. at 17, 307).

Radford argues that the ALJ improperly noted that "the case record evidence shows that he has sought very little medical treatment for his pain and this undermines the patient's overall credibility as well." (R. at 19). Radford asserts that the ALJ erred in not considering his obvious poverty as an explanation for his infrequent medical visits, citing Social Security Ruling ("SSR") 96-7p ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). The court does not agree that the ALJ violated SSR 96-7p. The ALJ noted that Radford did not return to the hospital as directed for follow up one week after he suffered his gunshot wound in 1997. (R. at 17). The ALJ also noted that the next time Radford sought treatment in 1999, it was for chest pain and he did not complain about back pain or the gunshot wound. (R. at 17, 303). Therefore, even when Radford did seek medical care at that time, he did not mention his back pain. *Id.* In September of 2008, Radford was in an

automobile accident, after which he went to a hospital emergency room complaining of lower back pain and a headache. (R. at 326-31). X-rays were taken and he was released with a prescription for Ibuprofen. *Id.* Under these circumstances, it was reasonable and proper for the ALJ to consider Radford's conservative and sporadic treatment

Contrary to Radford's characterization, the ALJ's credibility assessment was not "perfunctory." The ALJ considered the relevant evidence and gave specific, supported explanations for his evaluation. For all of these reasons, the court does not find the ALJ's credibility determination to be "patently wrong."

The ALJ's decision is supported by substantial evidence. The ALJ discussed and explained the reasons for the weight given to the opinions of Dr. Rhyant, Dr. Feliciano, Dr. Gibson, and the state agency physicians. The ALJ noted that orthopedic surgeon Dr. Gibson examined Radford on February 8, 2010, and determined that Radford complained primarily of lower back pain, range of motion was near normal, an x-ray revealed no deformity or abnormalities other than the bullet lodged in the body of the first lumbar vertebra, and he was not receiving any medical treatment other than taking Ibuprofen. (R. at 18, 344-46). Dr. Gibson opined that Radford should be restricted only in his ability to perform heavy work. *Id.* Dr. Gibson opined that Radford could lift and carry up to 50 pounds frequently, occasionally bend, stoop, kneel, crouch, and crawl, and that he could sit, stand, and walk up to 8 hours in an 8 hour workday. (R. at 18, 349-54). The ALJ noted that Dr. Rhyant opined in October of 2009, that Radford could lift less than 10 pounds. (R. at 19, 324). Dr. Rhyant had seen Radford on two occasions, and Dr. Gibson examined Radford once. (R. at 19). The ALJ gave neither opinion full credit, explaining his rationale for concluding that Radford could perform the exertional requirements of light work (lifting no more than 20 pounds occasionally and walking, sitting or standing no more than 6 hours in an 8 hour workday). *Id.*

As noted, the court's role in this case is not to attempt a *de novo* determination of Radford's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court cannot reweigh the evidence, including the opinions of treating and non-examining physicians.

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Radford's impairments and conclusion that he had not been under a disability as defined by the Act from June 30, 1998, through the date of the ALJ's decision, the decision must be affirmed.

### III. Conclusion

There was no reversible error in the assessment of Radford's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Radford is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 06/18/2012

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel